UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| OLEMA URU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 25-02524 (PLF) |
| ) | |
| MARCO RUBIO, ) | |
| Secretary of the U.S. Department ) | |
| of State, et al. ) | |
| ) | |
| Defendant. ) | |

OPINION

Plaintiff Olemo Uru is a national of Papua New Guinea who currently resides in the United States, having been admitted on an L-1 intercompany transfer nonimmigrant visa. Compl. ¶ 2.[1] Following his arrest for suspicion of driving while intoxicated, Mr. Uru's L-1 visa was revoked. See id ¶¶ 13-15. Shortly thereafter, agents of Immigration and Customs Enforcement ("ICE") apprehended Mr. Uru and, upon his arrival in immigration custody, placed him into removal proceedings. Id. ¶ 16.

---

[1] The Court has considered the following documents in connection with the pending motions: Plaintiff's Original Complaint for Writ of Mandamus and Declaratory and Injunctive Relief ("Compl.") [Dkt. No. 1]; Plaintiff's Emergency Motion for Temporary Restraining Order ("Pl. Mot.") [Dkt. No. 6]; Memorandum In Support of Plaintiff's Emergency Motion for Temporary Restraining Order and Request for Emergency Hearing ("Pl. Memo") [Dkt. No. 6-1]; Defendants' Combined Motion to Dismiss, Opposition to Motion for Temporary Restraining Order or Preliminary Injunction, and Memorandum in Support Thereof ("Defs. Mot.") [Dkt. No. 9]; Plaintiff's Response to Defendants' Combined Motion to Dismiss, Opposition to Motion for Temporary Restraining Order or Preliminary Injunction, and Memorandum in Support Thereof ("Pl. Reply") [Dkt. No. 11]; and Defendants' Reply in Further Support of Their Motion to Dismiss ("Defs. Reply") [Dkt. No. 13].

Pending before the Court are Mr. Uru's emergency motion for a temporary restraining order and the government's motion to dismiss Mr. Uru's complaint. After careful consideration of the parties' written submissions and the relevant authorities, the Court will grant the government's motion and deny Mr. Uru's motion as moot.

## I. BACKGROUND

### A. Statutory Background

Pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., there exists a nonimmigrant visa program for qualifying employees of multinational companies who are being transferred to the United States. See 8 U.S.C. § 1184(c). The INA provides that a temporary, nonimmigrant visa may be issued to a noncitizen who, after being employed continuously by the sponsoring employer for at least one year in the three years preceding the application, seeks to enter the United States to continue working for that employer "in a capacity that is managerial, executive, or involves specialized knowledge." Id. § 1101(a)(15)(L). "A visa granted to an employee whose work entails specialized knowledge is commonly referred to as an L-1B visa." Fogo De Chao (Holdings) Inc. v. Dep't of Homeland Sec., 769 F.3d 1127, 1130 (D.C. Cir. 2014).

"A consular officer, the Secretary, or a [State] Department official to whom the Secretary has delegated this authority is authorized to revoke a nonimmigrant visa at any time, in his or her discretion." 22 C.F.R. § 41.122(a); see 8 U.S.C. § 1201(i). While a consular officer is required "if practicable" to "notify the [noncitizen] to whom the visa was issued that the visa was revoked or provisionally revoked," revocation is effective regardless of whether the noncitizen is notified. 22 C.F.R. § 41.122(c). Pursuant to Section 221(i) of the INA, "[t]here shall be no means of judicial review . . . of a revocation." 8 U.S.C. § 1201(i).

*B. Factual and Procedural Background*

Mr. Uru is a national of Papua New Guinea, "currently residing in the United States pursuant to admission on a L-1 intracompany transfer non-immigrant visa." Compl. ¶ 2.[2] On August 30, 2024, Mr. Uru was issued an "L-1 intracompany transfer visa pursuant to a blanket petition filed by his employer." Id. ¶ 10. On September 11, 2024, Mr. Uru entered the United States to be employed as an Operations Shift Supervisor for a major oil and gas company in Beaumont, Texas. Id. ¶¶ 11-12. He "is currently still employed in this capacity." Id. ¶ 12.

On November 9, 2024, Mr. Uru was arrested in Jefferson County, Texas, for suspicion of driving while intoxicated. Compl. ¶ 13. No formal charges were ever filed in Jefferson County relating to this arrest. Id. ¶ 14. Mr. Uru was never arraigned on any charges, and no "evidence of any type" was ever presented in any court of law. Id. "[A]side from a single incident report," no formal police report detailing the event has been filed. Id.

On March 5, 2025, the U.S. Consulate in Papua New Guinea, Port Moresby, issued an email revocation of Mr. Uru's L-1 visa, citing Section 221(i) of the INA and stating that Mr. Uru "may be inadmissible and ineligible to receive a visa." Compl. ¶ 15. Mr. Uru did not receive prior notice or an opportunity to rebut the revocation. Id. On April 10, 2025, agents of ICE apprehended Mr. Uru, stating that the revocation of his visa on March 5, 2025, constituted a failure to maintain status under INA Section 237(a)(1)(C)(i). Compl. ¶16. Mr. Uru thereafter was placed in removal proceedings. Id.

Mr. Uru filed this action on August 25, 2025, alleging that the revocation of his visa was arbitrary and capricious under the APA, was ultra vires, and violated due process. See

---

[2] In his complaint, Mr. Uru states that he seeks the return of his "L-1A" visa. Compl. ¶ 32(a). But Mr. Uru's exhibit indicates that he possessed an L-B visa. See Pl. Mot. at Ex. 2.

3

Compl. at 5-7. Among other things, Mr. Uru seeks an order declaring that the revocation was unlawful and reinstating his visa or lawful status. Id. ¶ 32. On January 27, 2026, before the government's response to the Complaint was due, see Min. Order (Jan. 5, 2026), Mr. Uru filed an Emergency Motion for Temporary Restraining Order and Request for Emergency Hearing seeking "an order enjoining [the government] from enforcing the unlawful revocation of [his] visa pending final resolution of this action." Pl. Memo at 13. Mr. Uru contends that during his removal proceedings, "[a]fter a series of hearings, the Immigration Judge ordered cross briefs on removability, as to whether a revocation of nonimmigrant visa places a person out of status in violation of their terms of admission." Id. at 7. He further states that the Immigration Judge ruled in the government's favor and scheduled a "final hearing date for January 28, 2026, to determine whether" the Immigration Judge would order Mr. Uru removed from the United States. Id. During his final hearing before the Immigration Judge, Mr. Uru requested approval for and was granted voluntary departure. See Defs. Mot. at Ex. 1.

At the parties' request, the Court agreed to treat Mr. Uru's motion for a temporary restraining order as a motion for a preliminary injunction. See Min. Order (Feb. 2, 2026). On February 5, 2026, the government filed a combined motion to dismiss and opposition to Mr. Uru's request for a preliminary injunction. See Defs. Mot. Mr. Uru filed his combined response and reply on February 13, 2026, see Pl. Reply, and the government filed its reply on February 19, 2026, see Defs. Reply.

## II. LEGAL STANDARDS

### A. Motions to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and an act of Congress. See Janko v. Gates, 741 F.3d 136, 139

4

(D.C. Cir. 2014); Abulhawa v. U.S. Dep't of the Treasury, 239 F. Supp. 3d 24, 30 (D.D.C. 2017). Lack of subject matter jurisdiction is fatal to a court's authority to hear a case. See FED. R. CIV. P. 12(h)(3). The plaintiff bears the burden of establishing that the Court has jurisdiction. See Khadr v. United States, 529 F.3d 1112, 1115 (D.C. Cir. 2008); Walen v. United States, 246 F. Supp. 3d 449, 452 (D.D.C. 2017). In determining whether to grant a motion to dismiss for lack of subject matter jurisdiction, the Court must construe the complaint in the plaintiff's favor and treat all well-pleaded factual allegations as true. See Attias v. CareFirst, Inc., 865 F.3d 620, 627 (D.C. Cir. 2017). The Court "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," and the Court need not accept a plaintiff's legal conclusions. Disner v. United States, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting Speelman v. United States, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)). In determining whether a plaintiff has established jurisdiction, the Court "may consider materials beyond the pleadings where appropriate." Cumis Ins. Soc'y, Inc. v. Clark, 318 F. Supp. 3d 199, 207 (D.D.C. 2018).

### B. Motions to Dismiss for Failure to State a Claim

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must plead facts that "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570); see Spence v. U.S. Dep't of Veterans Affs., 109 F.4th 531, 539

(D.C. Cir. 2024). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

In deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022); see Ashcroft v. Iqbal, 556 U.S. at 678. The Court considers the complaint in its entirety, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and construes it liberally, granting the plaintiff "the benefit of all inferences that can [reasonably] be derived from the facts alleged," Sickle v. Torres Advanced Enter. Sols., LLC., 884 F.3d 338, 345 (D.C. Cir. 2018) (alteration in original). The Court, however, need not accept all inferences drawn by the plaintiff "if such inferences are unsupported by the facts set out in the complaint." Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016); see Ashcroft v. Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555); see also Kaempe v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.").

### C. Preliminary Injunctions

A movant seeking preliminary injunctive relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in

the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." Archdiocese of Wash. v. Wash. Metro. Area Transit Auth., 897 F.3d 314, 321 (D.C. Cir. 2018) (quoting League of Women Voters v. Newby, 838 F.3d 1, 6 (D.C. Cir. 2016)); see also Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (noting that a preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief" (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008))). Of these, the most important factor is whether a movant has established a likelihood of success on the merits. See Aamer v. Obama, 742 F.3d 1023, 1038 (D.C. Cir. 2014); Bailey v. Fed. Bureau of Prisons, Civil Action No. 24-1219 (PLF), 2024 WL 3219207, at *3 (D.D.C. June 28, 2024). "[A] failure to show a likelihood of success on the merits alone is sufficient to defeat a preliminary-injunction motion." Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (citing Ark. Dairy Coop. Ass'n v. U.S. Dep't of Agric., 573 F.3d 815, 832 (D.C. Cir. 2009)); see also M.G.U. v. Nielsen, 325 F. Supp. 3d 111, 117-18 (D.D.C. 2018).

### III. DISCUSSION

Mr. Uru contends that the revocation of his L-1 visa pursuant to 8 U.S.C. § 1201(i) was arbitrary and capricious, was ultra vires, and violated his due process rights. The Court agrees with the government that it lacks subject matter jurisdiction over Mr. Uru's claims.[3]

Under 8 U.S.C. § 1201(i), a "consular officer or the Secretary of State may at any time, in his discretion, revoke" a visa that has been issued. 8 U.S.C. § 1201(i). Pursuant to that statutory provision, "[t]here shall be no means of judicial review . . . of a revocation." Id. In

---

[3] The government also argues that the Court should dismiss the Complaint because Mr. Uru has failed to state a claim under the APA or the Due Process Clause, or to state an ultra vires action claim. See Defs. Mot. at 11-19. Because the Court concludes that it lacks jurisdiction, it need not reach those issue.

other words, "Congress has . . . expressly foreclosed judicial review of visa revocations." Jafari v. Pompeo, 459 F. Supp. 3d 69, 76 (D.D.C. 2020); see also, e.g., Bautista-Rosario v. Mnuchin, 568 F. Supp. 3d 1, 6 (D.D.C. 2021); Rahmani v. Yellen, Civil Action No. 24-0285 (RC), 2024 WL 1701681, at *15 (D.D.C. Apr. 19, 2024). Mr. Uru acknowledges that "Section 1201(i) bars review of the discretionary decision to revoke a visa." Pl. Reply at 11; see also id. at 5.[4] But he contends that this Court nonetheless has jurisdiction because his case "falls within exceptions to the statutory bar." Pl. Reply at 5.

Citing 8 U.S.C. § 1252(a)(2)(D), Mr. Uru argues that "ultra vires actions and constitutional claims are not precluded by Section 1201(i)." Pl. Reply at 5; see 8 U.S.C. § 1252(a)(2)(D). Section 1252(a)(2)(D) preserves "review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(D). Importantly, that provision requires a plaintiff to raise those issues "(1) directly in the 'appropriate court of appeals' and (2) 'upon a petition for review' of a final order of removal." Jimenez Verastegui v. Wolf, 468 F. Supp. 3d 94, 98 (D.D.C. 2020) (quoting 8 U.S.C. §§ 1252(a)(2)(D), 1252(a)(5)); see Abuzeid v. Mayorkas, 62 F.4th 578, 585 (D.C. Cir. 2023). Mr. Uru challenges the revocation of his visa under 8 U.S.C. § 1201(i) in a district court, and he concedes that he "do[es] not seek review of a removal order" and "do[es] not challenge the removal order itself." Pl. Reply at 6. Section 1252(a)(2)(D) therefore is inapplicable, and Mr. Uru does not identify any other basis upon which this Court may exercise jurisdiction over his claims in the face of Section 1201(i)'s jurisdictional bar. His complaint therefore must be dismissed.

---

[4] Mr. Uru also appears to concede that Section 1201(i) "preclude[s] judicial review" under the APA. 5 U.S.C. § 701(a)(1); see Pl. Reply at 11.

## IV. CONCLUSION

For the foregoing reasons, the government's Motion to Dismiss [Dkt. No. 9] is GRANTED and Mr. Uru's Emergency Motion for Temporary Restraining Order [Dkt. No. 6] is DENIED. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE: 2/25/26